UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JULIETTE BRYANT,

    Plaintiff,

v.

DARREN K. INDYKE and RICHARD D. KAHN,
in their capacities as the executors of the
ESTATE OF JEFFREY EDWARD EPSTEIN,

    Defendants.

CASE NO:

_____

**COMPLAINT**

BOIES SCHILLER FLEXNER LLP

1

Plaintiff Juliette Bryant, by her attorneys Boies Schiller Flexner LLP, for her Complaint against Defendants, Darren K. Indyke and Richard D. Kahn in their capacities as the executors of the Estate of Jeffrey Edward Epstein ("Epstein"), avers upon personal knowledge as to her own acts and status and upon information and belief and to all other matters as follows:

## NATURE OF THE ACTION

1. This suit arises out of Jeffrey Epstein's sexual abuse of Plaintiff beginning when Plaintiff was 20 years old that lasted years and included trafficking Plaintiff to each of his homes in the United States and Paris.

2. Plaintiff was a young girl living in South Africa with hopes of becoming a model when she was approached by one of Epstein's recruiters about a prospective modeling opportunity in the United States and invited to a restaurant to meet Epstein, who was dining with a former high U.S. Government official, a famous actor, and a well-known comedian. What appeared on the outside as a legitimate opportunity to break into the modeling business in the United States turned into years of horrific abuse and manipulation at the hands of Jeffrey Epstein.

3. Epstein's trafficking scheme involved recruiting young females by making false promises and using his wealth, power and threats to intimidate the females into submission to his demands. This same pattern was repeated numerous times with numerous young women.

4. As United States District Judge Kenneth Marra found, "From between about 1999 and 2007, Jeffrey Epstein sexually abused more than 30 minor girls . . . at his mansion in Palm Beach Florida, and elsewhere in the United States and overseas. . . . In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually. Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain

2

minors not only for his own sexual gratification, but also for the sexual gratification of others." *Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1204 (S.D. Fla. 2019) (internal citations omitted).

5.  Epstein organized this sex trafficking network to obtain hundreds of young females for himself for sex, and also lent these females out to other powerful and wealthy individuals to be sexually abused.

6.  Epstein conspired with others and hired staff to maintain and keep secret this network of sexual abuse for years, which sprawled throughout Epstein's residences in New York, Florida, New Mexico, the United States Virgin Islands, and Paris. Epstein's preference was to have three different young females a day for his sexual pleasure.

7.  Despite his significant criminal activity, in 2008 Epstein received a shockingly minimal charge, pleading guilty to a single Florida state law charge of procuring a minor for prostitution and a non-prosecution agreement (a "NPA") with the U.S. Attorney for the Southern District of Florida. Unknown to the public and the victims at the time, Epstein's lawyers were pressuring the Government to commit to the NPA without informing the victims. Epstein's multiple victims were kept in the dark and told to be "patient" while Epstein's lawyers worked to protect him and other potential co-conspirators from prosecution. Epstein served one year in jail, but was afforded the privilege of being able to leave the jail to go to work for twelve hours per day, six days per week.

8.  The NPA allowed Epstein to escape proportionate punishment for his actions and to continue operating his sex trafficking enterprise with liberty.

9.  A few years later, Epstein flippantly referred to his sexual abuse of multiple minors, and the slap on the wrist he had received for it, in a 2011 interview with the New York Post: "Billionaire pervert Jeffrey Epstein is back in New York City – and making wisecracks about his

just-ended jail stint for having sex with an underage girl. 'I am not a sexual predator, I'm an offender,' the financier told The Post yesterday. 'It's the difference between a murderer and a person who steals a bagel,' said Epstein." Amber Sutherland, *Billionaire Jeffrey Epstein: I'm a Sex Offender Not a Predator*, N.Y. Post (Feb. 25, 2011), https://nypost.com/2011/02/25/billionaire-jeffrey-epstein-im-a-sex-offender-not-a-predator/.

10.     In August 2018, just one year before his death, Epstein told a New York Times reporter "that criminalizing sex with teenage girls was a cultural aberration and that at times in history it was perfectly acceptable." James B. Stewart, *The Day Jeffrey Epstein Told Me He Had Dirt on Powerful People*, N.Y. Times (Aug. 12, 2019), https://www.nytimes.com/2019/08/12/business/jeffrey-epstein-interview.html.

11.     When Plaintiff was 20 years old, Epstein added her to his long list of victims by committing sexual assault and battery against her. As such, Epstein is responsible for battery and intentional infliction of emotional distress pursuant to New York common law. The damage to Plaintiff has been severe and lasting.

12.     This action has been timely filed pursuant to N.Y. C.P.L.R. § 215(8)(a), which provides that a plaintiff shall have at least one year from the termination of a criminal action against the same defendant to commence an action with respect to the event or occurrence from which the criminal action arose. A criminal action against Epstein with respect to the same sex trafficking enterprise from which Plaintiff's claims arise was terminated on August 29, 2019.

13.     This action has also been timely filed pursuant to N.Y. C.P.L.R. § 213-C, which provides that a plaintiff shall have 20 years to file civil claims "for physical, psychological or other injury or condition suffered by such person as a result of conduct which would constitute rape in the

4

first degree as defined in section 130.35 of the penal law." Epstein raped Plaintiff within 20 years of filing this Complaint.

14. Any statute of limitations applicable to Plaintiff's claims, if any, is tolled due to the continuous and active deception, duress, threats of retaliation, and other forms of misconduct that Epstein and his co-conspirators used to silence his many victims, including Plaintiff. Epstein's actions deprived Plaintiff of the opportunity to commence this lawsuit before his death. Until his death, Plaintiff feared that Epstein and his co-conspirators would harm her or her family, or ruin her life, if she came forward.

15. Defendants are equitably estopped from asserting a statute of limitations defense. Allowing Defendants to do so would be unjust. Epstein and his co-conspirators intimidated each of his victims into silence by threatening their lives and their livelihoods. They therefore prevented Plaintiff from commencing this lawsuit before his death. By using threats, along with his wealth and power, Epstein was able to escape punishment for his intolerable and brutal crimes against countless young women and underage girls for the duration of his life.

## PARTIES

16. Plaintiff Juliette Bryant is a citizen and resident of South Africa.

17. Defendant Darren K. Indyke is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

18. Defendant Richard D. Kahn is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

## JURISDICTION AND VENUE

19. Jeffrey Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death. Jeffrey Epstein maintained a residence in the Southern District of New

York.  As the legal representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands.

20. The amount in controversy in this action exceeds the sum or value of $75,000.00 excluding interests and costs and is between citizens of different states.  Accordingly, jurisdiction is proper under 28 U.S.C. § 1332.

21. Venue is proper in this Court as Epstein's sexual abuse of Plaintiff began in New York, New York, where he recruited her at the age of 20 and began grooming her for sex in his organized sex trafficking ring.

22. Many of the events giving rise to these causes of action occurred in the Southern District of New York, where a substantial amount of Epstein's property is located.  Thus, venue in this district is proper.  28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

A. **Epstein's Sex Trafficking Enterprise**

23. Jeffrey Epstein was widely renowned as a billionaire who used his vast connections to powerful individuals, and seemingly unlimited wealth and resources, to create a web of transcontinental sex trafficking that served himself, his co-conspirators, and some of the most powerful people in the world.

24. Epstein owned multiple residences and frequently travelled between them, including at 9 East 71st Street, New York, New York 10021, and at 49 Zorro Ranch Road, Stanley, New Mexico 87056, where the illegal sexual crimes against Plaintiff occurred.  Epstein conservatively valued his New York townhome at $55,931,000.00.  Epstein conservatively valued his New Mexico ranch at $17,246,208.00.  In addition, Epstein owned residences in the Virgin Islands, Florida, and France, and even on his own island, Great St. James Island, where his

transcontinental sex trafficking of hundreds of young females servicing him, his co-conspirators, and wealthy and powerful individuals around the world occurred.

25. The allegations herein concern Epstein's tortious acts against Plaintiff while at Epstein's mansion in New York, his home in Florida, his home in the Virgin Islands, his apartment in Paris, and his New Mexico ranch.

26. At all times material to this cause of action, Jeffrey Epstein utilized his seemingly unlimited power, wealth, and resources, as well as his deep connections to powerful and politically connected individuals to intimidate and manipulate his victims of sexual abuse.

27. Epstein and his co-conspirators had perfected a scheme for manipulation and abuse of young females. As part of the scheme, a female "recruiter" would approach a young female and strike up a conversation in an effort to quickly learn about the young female's background and any vulnerabilities they could expose. The recruiter would then manipulate the young female into coming back to one of Epstein's residences by offering the young female something she needed. At times the recruiter's lure would be a modeling opportunity, money for education, help for the young female's family, and a whole host of other related offers depending on their target's situation. Once in the residence, the recruiter and Epstein would work in concert to impress and intimidate the young female with displays of vast wealth, including having employees that were butlers and maids formally dressed around the house. They would also strategically place photographs of very powerful political and social figures amongst photographs and art displaying nude females in an effort to normalize the sexual abuse. They would also normalize the sexual abuse by placing a massage table and spa related products around the massage area in an effort to legitimize the area where the abuse was set to occur. Once abused, Epstein and his co-conspirators continued to manipulate the victims, using their

financial power, promises, and threats to ensure that the victim returned as directed and remained compliant with their demands.

B.     **The Arrest, Prosecution, and Death of Epstein**

28.    The sexual trafficking ring described herein started at least as early as 1995 and continued up until at least July 2, 2019, when the U.S. Attorney's Office for the Southern District of New York ("SDNY") charged Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591. He was arrested on July 8, 2019, pursuant to the SDNY's Sealed Two Count Indictment, which is attached as Exhibit A.

29.    The Indictment described Epstein's conduct and his abuse and trafficking of females in the same trafficking operation he used to abuse and traffic Plaintiff.

30.    Epstein's last will and testament (the "Will") was executed on August 8, 2019, at the Metropolitan Correctional Center. The witnesses were Mariel Colón Miró and Gulnora Tali. The Will included affidavits from Darren K. Indyke and Richard D. Kahn, in which they swear an "Oath of Willingness to Serve as Executor and Appointment of Local Counsel."

31.    Epstein was found dead in his cell at the Metropolitan Correctional Center on August 10, 2019.

32.    Epstein's last will and testament was filed on August 15, 2019, in the Probate Division of the Superior Court of the Virgin Islands.

33.    Darren K. Indyke and Richard D. Kahn filed a Certificate of Trust in the Superior Court of the Virgin Islands for Epstein's 1953 Trust on August 26, 2019. *See* Certificate of Trust, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Aug. 26, 2019).

34. Epstein's will was entered into probate on September 6, 2019, and the Superior Court of the Virgin Islands accordingly authorized Darren K. Indyke and Richard D. Kahn to administer Epstein's estate.  *See* Order for Probate, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019); Letters Testamentary, *In the Matter of the Estate of Jeffrey E. Epstein*, Probate No. ST-19-PB-80 (Super. Ct. V.I. Sept. 6, 2019).

35. The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate."  The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated . . . to the then acting Trustees of The 1953 Trust."

36. Following Epstein's death, SDNY submitted a proposed nolle prosequi order in the criminal matter against him because it was required by law to do so after Epstein was deceased.  On August 29, 2019, U.S. District Judge Richard Berman formally dismissed SDNY's indictment against Epstein, terminating the criminal action against him.  Plaintiff's claims are therefore timely under N.Y. C.P.L.R. § 215(8)(a).

C. **Juliette Bryant**

37. Plaintiff Juliette Bryant was born on July 23, 1982, in South Africa.

38. In 2002, Juliette was 20 years old and an aspiring model.  In Cape Town, Naja Hill, an American model, approached Juliette in an attempt to befriend her.  Hill asked Juliette if she would like to meet Epstein, who she called the "King of America."  Hill described Epstein as a well-connected billionaire who could help her with her modeling career and explained that he was visiting Africa with a former high U.S. Government official, a famous actor, and a well- known comedian.

39.     Juliette considered meeting Epstein an amazing opportunity because modeling in New York City had always been one of her biggest dreams.  Hill brought Juliette to a restaurant to meet Epstein, who at the time was dining with the former high U.S. Government official, the famous actor, and the well-known comedian.  Juliette had never met a celebrity before.  She was invited to attend a speech the former high U.S. Government official was giving in Cape Town the next day, and was escorted to the speech by police cars with individuals associated with the former official.

40.     Later, Epstein asked Juliette to bring her modeling portfolio to his hotel for "casting."  Epstein told Juliette that he owned a modeling agency and would get her an agent in New York.  He also mentioned that his good friend, Les Wexner, owned Victoria's Secret, a lingerie conglomerate.

41.     Within a few days, Leslie Groff began calling Juliette.  Groff told Juliette that Epstein wanted to bring her to New York City to model.  Groff, who was in New York at the time, helped Juliette get a visa, passport, and airline tickets.  It was Juliette's first time traveling overseas, so she was nervous.  Epstein called Juliette's mother from New York to assure her that Juliette would be safe with him in New York.

42.     Within two weeks, Juliette arrived in New York.  A car picked her up from the airport and brought her to an apartment building on 66th Street, where Epstein housed some of the other models who he was abusing.  But Juliette was not there for long.  Shortly after arriving at the apartment, Sarah Kellen, another one of Epstein's co-conspirators, called and told Juliette that Juliette was going to the Caribbean.  Juliette did not understand why she was traveling to the Caribbean so soon after arriving in New York City, but hoped it was for a modeling job.

| 2002 | | | From | To | | |
|---|---|---|---|---|---|---|
| 29 | B-727-31H | N909JE | LFPB | EGGW | 146 SAME AS ABOVE LESS JE, SK, +EB, LAURA + CINDY WASSERMAN | 1/1 |
| OCT 1 | " | " | EGGW | LFPB | 147 GM, NICK + EDWINA SIMMONS | |
| 2 | " | " | LFPB | JFK | 148 JE, GM, SK, CL, ANDREA METROVICH, NAOMI CAMPBELL | |
| 3 | " | " | JFK | PBI | 149 JE, SK, ANDREA METROVICH, NICK SIMMONDS, CHASE, 1 FEMALE | |
| 6 | G-1159B | N909JE | PBI | TEB | 1597 JE, SK, ANDREA, RYAN P, 1 FEMALE | |
| 11 | " | " | TEB | PBI | 1598 JE, GM, ANDREA, RYAN, STAFF | |
| 14 | " | " | PBI-OPF-PBI | | 1599 MARK POTTER - PPC ILS SINGLE ENGINE + GO AROUND SE | 1/1 |
| 15 | " | " | PBI | TEB | 1600 JE, GM, ANDREA METROVICH, RYAN DEJONG | 1/1 |
| 17 | " | " | TEB | TIST | 1601 JE, SK, ANDREA METROVICH | |
| 21 | " | " | TIST | PBI | 1602 JE, SK, AM, ANNA MANIS, JULIETTE BRYANT | 1/1 |

43. Juliette was taken on Epstein's private plane. During the flight, Epstein began sexually touching Juliette's leg. She felt trapped and terrified, and feared that she would be killed.

44. They arrived at Epstein's home in the Virgin Islands. Epstein's abuse of Juliette there began when Kellen sent Juliette to Epstein's room to massage him. For the rest of the trip, Epstein repeatedly raped Juliette by forcible compulsion. Kellen repeatedly sent Juliette to Epstein's room, where he would touch her, use massage devices on her, force her to perform oral sex on him, and sexually force himself on her. Juliette also witnessed another young girl performing oral sex on Epstein in front of Juliette while they were watching a movie. Juliette was terrified of Epstein and his power. No one knew where she was and she believed that if anything happened to her, no one would ever know.

45. Instead of fulfilling her dreams of becoming a model in New York City, Juliette was subject to extreme and repeated sexual abuse. Epstein's sexual abuse of Juliette was humiliating and degrading, and caused Juliette to cry herself to sleep each night. She felt trapped and alone on Epstein's private island. Juliette learned very quickly that Epstein was incredibly powerful and that she should not disobey his demands.

46. Epstein's abuse of Juliette lasted for years. Epstein forced her to travel to the United States many times to see Epstein and be subjected to repeated sexual abuse for one to two weeks

at a time, sometimes staying in his New York apartment. Epstein never introduced Juliette to a modeling agent, and she was never hired for a modeling job.

47. For those years, Juliette felt like a prisoner and was afraid of betraying Epstein because of his money and power. She was afraid he would hurt her or her family. In fact, the very first time Epstein brought Juliette to the United States, in order to scare her, he told her that when another woman had accused him of rape, he planted drugs in the woman's apartment and had her sent to prison.

48. Epstein made very clear to Juliette that he was incredibly wealthy, powerful, and regularly in contact with world leaders. In fact, in his New York mansion he had photographs displayed of significant political figures to ensure that any young female entering the home would know that he had extensive government connections. Epstein was not to be disobeyed and he made clear by his words and actions that there would be consequences if Juliette did not comply with his demands.

49. Juliette was also forced to travel to Epstein's home in Paris where she had to stay with Ghislaine Maxwell, one of Epstein's main recruiters of young females, and where Sarah Kellen forced her to be photographed nude for Epstein. During that trip, Juliette witnessed that young females were on call to sexually pleasure Epstein.

50. Juliette's final trip to the United States was in 2004. She flew to see Epstein at his New Mexico ranch, called "Zorro Ranch." Epstein abused Juliette at Zorro Ranch. During that trip, Epstein took Juliette with him to meet another important government official. Juliette complied and went with Epstein. At the meeting, Juliette believed that Epstein had brought her there so that the official could look her over. Juliette felt very uncomfortable and she and Epstein began to fight because he claimed she was not being obedient. Epstein then informed Juliette that he

wanted her to travel with him on his plane to California and serve drinks to some of his scientist friends who were going to be flying with him to California. But before the flight, after an argument with Epstein, Juliette flew home to South Africa. This was the last time Juliette visited Epstein.

51.     Epstein attempted to keep in contact with Juliette through e-mail over the years. For example, in 2016, Epstein e-mailed Juliette to ask if she knew Sarah Ransome, another woman who was a victim of Epstein's sex trafficking scheme. In June 2019, only two months before his death, Epstein sent Juliette an e-mail asking her to send him nude photographs.

52.     Juliette was deeply affected by her harrowing experiences at the hands of Epstein. She developed eating disorders that affected her for years afterwards. She also suffered from substance abuse, debilitating panic attacks, and severe anxiety.

53.     Epstein's sexual assault and battery of Juliette continues to cause her significant distress and harm.

## FIRST CAUSE OF ACTION

### (Battery)

54.     Plaintiff repeats and re-alleges the allegations stated above in paragraphs 1–53 as if fully set forth herein.

55.     Epstein intentionally committed battery by sexually assaulting Plaintiff on numerous occasions at his homes in New York, New Mexico, Florida, France, and the U.S. Virgin Islands. As described above, on multiple occasions over a years-long period, Epstein raped Plaintiff and intentionally touched intimate parts of her body in an offensive and sexual manner without her consent.

56. Epstein's actions constitute sexual offenses as defined in New York Penal Law Article 130, including but not limited to rape in the first degree as defined in Article 130.35, inasmuch as Epstein engaged in sexual intercourse with Plaintiff by forcible compulsion. *See* N.Y. C.P.L.R. § 213-C.

57. A criminal action against Epstein with respect to the same sex trafficking enterprise from which Plaintiff's first cause of action arises was terminated on August 29, 2019, less than one year prior to the filing of this Complaint. *See* N.Y. C.P.L.R. § 215(8)(a).

58. As a direct and proximate result of Epstein's conduct, Plaintiff has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, anxiety, panic attacks, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

59. Plaintiff repeats and re-alleges the allegations stated above in paragraphs 1–53 as if fully set forth herein.

60. As a direct result of these allegations as stated, Epstein committed intentional infliction of emotional distress against Plaintiff.

61. Epstein's actions, described above, constitute extreme and outrageous conduct that shocks the conscience. Epstein's plan to recruit, entice, rape, and assault Plaintiff on multiple occasions goes beyond all possible bounds of decency and is intolerable in a civilized community.

62. Epstein knew or disregarded the substantial likelihood that these actions would cause Plaintiff severe emotional distress.

63. A criminal action against Epstein with respect to the same sex trafficking enterprise from which Plaintiff's second cause of action arises was terminated on August 29, 2019, less than one year prior to the filing of this Complaint. See N.Y. C.P.L.R. § 215(8)(a).

64. As a direct and proximate result of Epstein's conduct, Plaintiff has in the past and will in the future continue to suffer extreme emotional distress, humiliation, fear, anxiety, panic attacks, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action asserted within this pleading.

Dated: November 14, 2019.

/s/ Joshua I. Schiller

David Boies
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200

Joshua I. Schiller
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300

                Sigrid McCawley
                (Pro Hac Vice Pending)
                BOIES SCHILLER FLEXNER LLP
                401 E. Las Olas Blvd., Suite 1200
                Ft. Lauderdale, FL 33301
                (954) 356-0011