

Sigrid S. McCawley
Telephone: (954) 377-4223
Email: smccawley@bsfllp.com

May 7, 2020

**VIA ECF**

The Honorable Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *Juliette Bryant v. Darren K. Indyke & Richard D. Kahn,* **19-10479-ALC-DCF**

Dear Judge Freeman:

    We write on behalf of Plaintiff Juliette Bryant in the above-captioned litigation. Pursuant to Individual Rule II.A and Local Civil Rule 37.2, Plaintiff respectfully requests a pre-motion conference on Plaintiff's anticipated motion to compel Defendants Darren K. Indyke and Richard D. Kahn (1) to produce responsive documents from the Relevant Period as defined in Plaintiff's discovery requests; (2) to produce documents responsive to Plaintiff's requests, not simply documents that directly mention Plaintiff's name; and (3) to respond to Plaintiff's interrogatories.[1] The Court has made clear that discovery in this case would not be stayed pending the approval of the claims administration program or a motion to dismiss absent a contrary order from the Court. *See* Tr. of Nov. 21, 2019 Conf. at 26:10-12. Yet by failing to comply with their clear and unequivocal discovery obligations, including not producing *a single document* to date, Defendants are attempting to grant themselves a *de facto* stay of discovery. Defendants have provided no basis for their delay.

I.    <u>Background</u>

    Plaintiff alleges that Jeffrey Epstein and his co-conspirators operated a decades-long sex-trafficking scheme by which they recruited young women for sexual abuse. Compl. ¶¶ 27, 28. Plaintiff was one of those women. Epstein and his associates trafficked her from South Africa in 2002 and sexually abused her for several years thereafter in New York, Florida, the U.S. Virgin Islands, New Mexico, and France. *Id.* ¶¶ 41, 55. After years of suffering in silence due to fear and Epstein's psychological manipulation, she filed a complaint against Defendants on November 14, 2019.

    On January 23, 2020, the parties exchanged initial Rule 26 disclosures. Defendants' Rule 26 Disclosures were vacuous. Defendants provided the names of two witnesses—Plaintiff and her ex-boyfriend—and stated that they were not aware of *any* documents, ESI, or tangible things in

---

    [1]    Pursuant to Individual Rule I.C., Plaintiff states that she conferred in good faith with Defendants about the issues raised in this letter by telephone on April 27, 2020.

their possession, custody, or control that they would use to support their defenses. Exhibit A, Jan. 23, 2020 Initial Disclosures of Defendants Darren K. Indyke and Richard D. Kahn. In response to Defendants' lack of information as to what relevant documents were in their possession, custody, or control, on January 28, 2020, Plaintiff sent them a document preservation notice and identified various email accounts used by Jeffrey Epstein. Exhibit B, Jan. 28, 2020 Document Preservation Notice. Defendants responded on February 3, 2020, by stating that they were abiding by all of their discovery obligations, including their preservation obligations. Exhibit C, Feb. 3, 2020 Letter from B. Moskowitz to S. McCawley.

On March 10, 2020, Plaintiff served 91 Requests for Production ("RFPs") and 17 Interrogatories on Defendants (collectively, Plaintiff's "discovery requests"). In Plaintiff's interrogatories, she again asked Defendants to identify potential witnesses, in addition to email accounts used by Epstein, telephone numbers used by Epstein, and other information to aid Plaintiff in identifying witnesses and the location of evidence necessary to prove her case. On April 16, 2020, after Plaintiff provided Defendants a week-long extension, Defendants served responses and objections in which they ***failed to respond to a single Interrogatory*** (aside from identifying Plaintiff as a witness to her own abuse) and ***failed to produce a single document***. Exhibit D, Defendants' Apr. 16, 2020 Objections and Responses to Plaintiff's First Set of Interrogatories; Exhibit E, Defendants' Apr. 16, 2020 Objections and Responses to Plaintiff's First Request for Production of Documents.

On April 27, 2020, after sending Defendants a letter regarding the clear deficiencies in their responses and objections, Plaintiff met and conferred with Defendants for an hour and a half. *See* Ex. F, Apr. 20, 2020 Letter from S. McCawley to B. Moskowitz. Defendants stated that they had not yet fully processed the ESI in their possession, had not run any searches on the ESI, and were not in a position to provide information about the ESI, despite having received Plaintiff's document retention notice in January and Plaintiff's discovery requests in March. During the meet and confer, Plaintiff also explained her position on the relevance and necessity of each of her discovery requests, and offered to answer any questions that Defendants had about the relevance of any of her requests. Defendants refused to accept the Relevant Period that Plaintiff defined in her discovery requests, and stated that they would only produce documents that reference Plaintiff. They also stated, without providing any legal basis for their position, that they would not produce anything relating to Epstein's sex trafficking or abuse of other victims.

As of today, May 7, 2020, Plaintiff has yet to receive a single document or piece of information responsive to any of her discovery requests, including the documents that specifically reference Plaintiff that Defendants agreed to produce. The only information Defendants have provided to Plaintiff in the course of discovery is their statement that Plaintiff is a witness in this case. Plaintiff has produced more than 10,000 pages of documents responsive to Defendants' discovery requests to date, and has responded to all of Defendants' interrogatories to the best of her ability.

II. Defendants' Objection to the Relevant Period is Improper.

Defendants have improperly objected to the Relevant Period that Plaintiff defined in her discovery requests as January 1, 2001 to the present. Without providing any legal basis for their

position, Defendants contend that the relevant time period should be limited to the dates of Plaintiff's abuse as alleged in the Complaint.[2]

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "[R]elevance for the purposes of discovery is an extremely broad concept." *Melendez v. Greiner*, No. 01 CIV.07888 SAS DF, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) (Freeman, J.).

This case turns on (1) whether Jeffrey Epstein sexually trafficked and sexually assaulted Plaintiff and (2) whether Plaintiff's claims are timely, an affirmative defense that Defendants have already raised in a motion to dismiss. ECF No. 24. Discovery from the Relevant Period as defined by Plaintiff is relevant to both Plaintiff's claims and Defendants' statute of limitations defense, and is reasonably calculated to lead to the discovery of admissible evidence.

Epstein's sexual trafficking and abuse of Plaintiff began in 2002 and lasted through approximately 2004. But Plaintiff has reason to believe, based on publicly available documents, that Epstein and his co-conspirators began trafficking and sexually abusing young girls and women in the same manner that he trafficked and abused Plaintiff in the mid-1990s, and continued to do so up until the date of Epstein's arrest on July 8, 2019. Documents relating to the sexual trafficking and/or sexual assault of others at any point during that period would make the fact that Epstein trafficked and sexually assaulted Plaintiff, the key fact that Plaintiff bears the burden of proving in this case, more probable than it would be without such evidence. *See* Fed. R. Evid. 401. Plaintiff also bears the burden of proving Epstein's intent to sexually assault her. *See Cerilli v. Kezis*, 16 A.D.3d 363, 364 (2d Dep't 2005) ("The elements of battery are bodily contact, made with intent, and offensive in nature."). Evidence that he sexually trafficked and assaulted others would be directly relevant to proving such intent. Such evidence would also likely be admissible at trial. *See* Fed. R. Evid. 415.

Further, Defendants have raised a statute of limitations defense in this matter, ECF No. 24, and Plaintiff contends that they should be equitably estopped from doing so based on Epstein's misconduct. Compl. ¶ 15. Although Plaintiff disagrees with Defendants' interpretation of the case law, Defendants contend that to invoke equitable estoppel, Plaintiff bears the burden of proving that Epstein's "conduct caused her to delay bringing suit," that Epstein "made a definite misrepresentation of fact and had reason to believe that the plaintiff would rely on it," and that "plaintiff reasonably relied on that misrepresentation." ECF No. 24 at 13. Documents relating to Epstein's misconduct after his abuse of Plaintiff ended could very well be relevant to equitable estoppel, including to whether Plaintiff reasonably relied on that misconduct in staying silent about her abuse until after Epstein's death.

The fact that Epstein and his co-conspirators carried out a sex-trafficking operation, which directly injured Plaintiff, for 20 years does not mean that Plaintiff is not entitled to discovery about that operation. Yet Defendants have taken that position and have not indicated any willingness to change it. The Court should direct Defendants to search documents within their possession,

---

[2] This is despite the fact that Defendants themselves served discovery requests on Plaintiff in which they defined the relevant time period as "the date on which you first learned of Decedent through the date of your responses to these requests."

custody, or control from the Relevant Period as described in Plaintiff's discovery requests—2001 to the present.

III. <u>Defendants Must Produce More than Documents That Explicitly Reference Plaintiff.</u>

In addition to their blanket objection to the production of documents from any year during which Plaintiff was not herself sexually assaulted, Defendants contend that they will only produce one category of documents—those that specifically mention Juliette Bryant. Defendants have refused, without providing any legal basis for doing so, to produce any document that does not directly reference Plaintiff, regardless of the year.

Defendant cannot broadly object to producing *any documents* that do not directly reference Plaintiff. Documents relevant to Plaintiff's claims and Defendants' defenses go well beyond documents that reference Plaintiff. The following is a small sampling of examples of relevant documents that would not necessarily mention Plaintiff:

- As explained above, documents evidencing Epstein's trafficking and sexual assaults of others, although not about Plaintiff herself, are directly relevant to whether he trafficked and sexually assaulted Plaintiff.

- Epstein's communications with his co-conspirators are likely to evidence the scheme by which Epstein recruited and abused Plaintiff, even if they do not specifically mention Plaintiff. For example, documents in which Epstein and his co-conspirators discuss recruiting young models or arranging for the travel of foreign girls for sexual abuse would corroborate Plaintiff's allegations.

- Documents relating to payments from Epstein to his employees are relevant to whether Epstein paid his employees to keep them quiet, and would be relevant in impeaching witnesses in this case.

- Documents relating to Epstein's silencing, intimidation, and manipulation of victims other than Plaintiff is relevant to establishing whether Plaintiff reasonably feared Epstein, which is relevant to Defendants' statute of limitations defense and Plaintiff's equitable estoppel theory.

- Documents relating to Epstein's recruitment of Plaintiff while on the following trip to South Africa, including details about travel plans and itineraries, would not mention Plaintiff's name but are nevertheless highly relevant to what transpired:

| 21 | B-727-31A | N908JE | JFK | LPAZ | | 136 | PRESIDENT WILLIAM J. CLINTON, KEVIN SPACEY, CHRIS TUCKER, JE, GM, |
|----|-----------|--------|-----|------|---|-----|---|
| 22 | " | " | LPAZ | DGAA | | 137 | SK, CL, CHAUNTAE DAVIES, ANDREA MITROVICI, DOUG BAND, DAVID SLAG, JIM KENNEY |
| 23 | " | " | DGAA | DNAA | | 138 | ERIC NONACS, ROSEMARY SLATER, CASEY FLYNN, WASSERMAN, RON BURKLE, (GAYLE SMITH) |
| 24 | " | " | DNAA | HRYR | | 139 | SAME AS ABOVE LESS RON BURKLE |
| 25 | " | " | HRYR | FQMA | | 140 | SAME AS ABOVE PLUS ERA MAGAZINER |
| 26 | " | " | FQMA | FACT | | 141 | SAME AS ABOVE |
| 27 | " | " | FACT | FAJS | | 142 | SAME AS ABOVE LESS JE, CM, SK, CL, CHAUNTAE DAVIES, ANDREA MITROVICH |
| 28 | " | " | FAJS | FACT | | 143 | SAME AS ABOVE LESS GAYLE SMITH, ERA MAGAZINER |
| 29 | " | " | FACT | DGAA | | 144 | SAME AS ABOVE ADD, JE, GM, SK, CL, CM, AM |
| 29 | " | " | DGAA | LFPB | | 145 | SAME AS ABOVE |

Plaintiff explained these theories of relevance during a meet and confer call with Defendants. Without any legal basis, and while purporting to understand Plaintiff's position, Defendants consistently maintained that they would not produce *any document* that does not directly mention Juliette Bryant. This position unwarranted, legally baseless, and unacceptable, and Defendants have not indicated that they are willing to change it. The Court should direct Defendants to search for documents within their possession, custody, or control and not allow Defendants to unilaterally and arbitrarily limit their search to documents that reference Plaintiff's name.

IV. Defendants Must Respond to Plaintiff's Interrogatories.

Plaintiff served 17 interrogatories on Defendants, and Defendants failed to answer a single one, aside from listing Plaintiff as an "individual who may have knowledge concerning the issues in this lawsuit." Ex. D at 3. Plaintiff asked Defendants to identify email accounts used by Epstein or his employees or agents on his behalf—Defendants provided no answer. *Id.* Plaintiff asked Defendants to identify telephone numbers used by Epstein or his employees or agents on his behalf—Defendants provided no answer. *Id.* at 4. Plaintiff asked Defendants to provide a list of Epstein's employees in an effort to identify potential witnesses to Epstein's abuse of Plaintiff and other victims—Defendants provided no answer. *Id*. This is despite the fact that Defendant Kahn is Epstein's longtime accountant and likely knows who was on Epstein's payroll. This total failure to answer even basic questions about the location of documents and potential witnesses is egregious.

When asked about their failure to respond to any interrogatories, in addition to raising their meritless objections to the Relevant Period and to producing information that does not relate directly to Plaintiff, Defendants stated that they do not have responsive information because Epstein is dead and Defendants do not know where to look for responsive information. Defendants also drew a distinction between their capacities as Epstein's lawyer and accountant, as opposed to their capacities as executors of his Estate, but could not give Plaintiff a clear answer as to their position on how that distinction affects their discovery obligations. For example, Defendants' counsel could not tell Plaintiff whether Darren Indyke—Epstein's longtime lawyer who has ties to

Epstein's co-conspirators[3]—or Richard Kahn—Epstein's longtime accountant who assisted him for years with both personal and professional accounting work—had ever been directly asked whether they know of any individuals who might have information about Plaintiff's claims.

Plaintiff still has no understanding of how Defendants have attempted to fulfill their discovery obligations, or of what documents or information are within their possession, custody, or control. At this stage in the litigation, such opaqueness is unacceptable and a clear attempt by Defendants to avoid their discovery obligations in the hopes that the claims administration process comes to fruition. But Defendants cannot unilaterally decide to stay this case. The Court should direct Defendants to respond to Plaintiff's interrogatories.

Respectfully submitted,

*/s/ Sigrid S. McCawley*

Sigrid S. McCawley, Esq.

cc: Counsel of Record (via ECF)

---

[3] According to public records, Indyke, for example, helped Ghislaine Maxwell buy her townhouse, was listed on documents relating to one of Maxwell's nonprofits, held a power of attorney over one of Leslie Wexner's properties, and employed Lesley Groff as an executive assistant for his law practice. *See* Julia La Roche et al., *Jeffrey Epstein's Lawyers Deeply Involved in His Business Dealings for Decades, Documents Show*, Yahoo Finance (Aug. 13, 2019), https://finance.yahoo.com/news/jeffrey-epstein-lawyers-darren-indyke-jeffrey-schantz-164305188.html.